Raymond GROSSMULLER

v.

The BUDD COMPANY CONSOLIDATED RETIREMENT BENEFIT PLAN FOR EMPLOYEES.

Civ. A. No. 80–0297.

United States District Court,
E. D. Pennsylvania.

Sept. 10, 1982.

Stephen G. Pollack, Stack & Gallagher, P.C., Philadelphia, Pa., for plaintiff.

Carter R. Buller, John M. Bernard, Jonathan A. Boxer, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendant.

## MEMORANDUM

GILES, District Judge.

A bench trial was held in the above-captioned matter on September 24 and 25, 1981.[1] The following constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a),[2] based upon this trial.

### Findings of Fact

1. Plaintiff, Raymond Grossmuller, had been employed by the Budd Company since June 11, 1951 but retired due to physical disability. Plaintiff was and is a member of Local 813 of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW ("Local 813").

2. Since approximately July 1, 1973, he had received disability benefits through the defendant, Budd Company Consolidated Retirement Plan for Employees ("Retirement Plan").

3. The Retirement Plan is a plan established and maintained pursuant to a collective bargaining agreement.

4. On August 10, 1977, the Local Board of Administration of the Retirement Plan, ("Local Board"), consisting of an equal number of appointees of the Budd Company and Local 813, terminated plaintiff's disability benefits. It concluded that he had become disqualified for benefits because he was engaged in a "regular employment or occupation for remuneration or profit."

5. Prior to the termination of his benefits, plaintiff was not apprised by the Retirement Plan nor by the Local Board of the accusations of alleged gainful employment.

6. On August 15, 1977, the Local Board notified plaintiff by letter that his disability benefits had been terminated, effective immediately, on the basis of available evidence which led it to believe that he was gainfully employed. The provision of the Retirement Plan on which the action was based was cited in the letter. However, the letter did not specify the evidence upon which the conclusion of gainful employment had been reached.

7. Only by speaking with the President of Local 813, also a member of the Local Board, did plaintiff learn that he could appeal the termination decision to the Local Board. However, plaintiff was not informed of the allegations of fact he had to deny or rebut.

8. By letter dated August 30, 1977, plaintiff protested the termination of benefits and requested an appearance before the Local Board to state and prove that he was not gainfully employed then, or at any time since the commencement of his disability. He was not given an opportunity to appear as requested.

---

1. A transcript was not ordered by either party. Therefore, the court relies upon its notes and recollection of the record evidence.

2. In a bench opinion rendered March 17, 1981, I granted summary judgment as to plaintiff's former employer, his local union and the international union. By order and memorandum dated April 15, 1981, I ruled that the remaining defendant, the Budd Company Consolidated

Retirement Plan, was entitled to judgment as a matter of law on plaintiff's substantive due process and state action claims. Summary judgment, however, was not granted in favor of the Retirement Plan on plaintiff's procedural due process claim. The bench trial in September, 1981 was held to consider this part of the complaint. See *Grossmuller v. International Union, U.A.W.*, 511 F.Supp. 709 (1981).

9. By letter dated September 14, 1977, the Local Board acknowledged receipt of plaintiff's letter of August 30, 1977, and forwarded to him a copy of standard "Pen 111, Notice of Appeal" form.

10. The Penn 111 appeal form neither apprised plaintiff of the factual basis of the Local Board's termination action nor of the manner or procedure by which he could challenge the Board's decision.

11. On September 22, 1977, plaintiff completed and returned the appeal form requesting an appeal to challenge the Local Board's action.

12. On October 12, 1977, the Local Board denied plaintiff's appeal without giving him an opportunity to appear, present evidence, or confront the allegations considered against him. The denial of benefits was reaffirmed by the Local Board based upon a review of the evidence which had been presented at its earlier meeting on August 10, 1977.

13. On or about October 12, 1977, the Local Board notified plaintiff of his right to appeal its decision to the National Board of Administration ("National Board") by signing and dating another Penn 111 form. Again, that form did not apprise plaintiff of any right or opportunity to present or refute evidence before the National Board.

14. On or about October 21, 1977, the plaintiff filed a formal appeal of the decision of The Local Board to the National Board in which he denied that he was or had been gainfully employed on a regular basis.

15. On December 20, 1977, the National Board discussed and ruled upon plaintiff's case, denying his appeal. Plaintiff was not present at this meeting, nor was he given the opportunity to present evidence, either in writing or in person, in response to the factual basis for termination of benefits.

16. On January 11, 1978, based upon information gathered through its representatives on the Local Board, the Budd Company recommended plaintiff for discharge because of his gainful employment while receiving disability benefits.

17. On January 18, 1978, a Budd Company disciplinary hearing was held on the discharge action but was continued at the request of plaintiff's union representative. Plaintiff never conceded to the company that he was gainfully employed.

18. Based upon information gathered through its representatives on the Local Board, the grievance pertaining to the discharge was not processed by the Union. Therefore, plaintiff never learned through the labor contract grievance machinery the specific allegations of fact to support either his termination from employment or his termination of disability benefits.

## Discussion

The Retirement Plan is an employee benefit plan within the meaning of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Plaintiff charges that he suffered a denial of procedural due process at the Local and National Board levels when those boards initially denied and affirmed the termination of his disability benefits.

The ERISA requirements for a benefit claims procedure are set forth in 29 U.S.C. § 1133. This section provides that

[e]very employee benefit plan shall: (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

The applicable regulations in 29 C.F.R. § 2560.503–1(b)(2), state in pertinent part:

In the case of a plan established and maintained pursuant to a collective bargaining agreement . . . such plan will be deemed to comply with the [fair notice, hearing and review] provisions of paragraphs (d) through (h) of this section if the collective bargaining agreement pur-

suant to which the plan is established or maintained sets forth or incorporates by specific reference

(1) Provisions concerning the filing of benefit claims and the initial disposition of benefit claims, and

(2) A grievance and arbitration procedure to which denied claims are subject.

The Retirement Plan in question here is established and maintained pursuant to a collective bargaining agreement. However, the review procedures established by the National Board do not provide for an effective grievance and arbitration procedure. The sole provision for arbitration provided to claimants such as the plaintiff herein, is set forth in the National Agreement between The Budd Company and The International Union U.A.W. *See* Exhibit "C", Consolidated Retirement Plan, Article IX, § 9.3 set forth in the margin.[3] According to the National Agreement, arbitration is triggered only when the National Board is deadlocked.

Defendant argues that this provision suffices to bring the Retirement Plan into compliance with federal regulations. This argument, however, assumes that at some point in the review process, whether at the local or national level, the employee has had a full and fair opportunity to make a record of his version of the evidence. Where, as here, the employee is precluded by the existing procedures from confronting the accusations against him and from giving his version, only the accusations become subject to the review process; the employee's claim to benefits does not.[4] Therefore, the claims procedure of the Retirement Plan does not fit within the framework established for plans maintained pursuant to a collective bargaining agreement and thus cannot be deemed to comply with the provisions of paragraphs (d) through (h) of subsection 29 C.F.R. § 2560–503–1(b)(2), which subsection is quoted above.

The failure to provide the claimant with an opportunity to make a record which comports with procedural due process is substantiated by a number of factors. In a letter dated August 15, 1977, the plaintiff was merely informed by The Local Board that his benefits were being terminated on the ground that he was found to be gainfully employed. The letter did not apprise him of the alleged employment which had lead the Local Board to believe his benefits should be terminated. Nor did the letter inform plaintiff of the specific steps he could take to challenge the termination action on evidentiary grounds. Rather, the

---

3. § 9.3 provides that the duties of the National Board of Administration shall be to:

   a. provide forms and establish procedures to be followed in filing and processing applications for benefits under the Plan;

   b. hear and determine any issue deadlocked in a Local Board of Administration and hear and determine any appeal which has previously been made to a Local Board of Administration by an Employee or his beneficiary, involving interpretation of the Plan, which has not been determined to the satisfaction of such Employee or beneficiary.

   In the event of a deadlock on the National Board, the National Board within 30 days thereafter shall select an impartial person who shall be empowered to render final decision in such matter. The impartial person shall be required to render such decision within 60 days after the date on which the item is submitted to him for consideration and his decision shall be binding on all parties concerned. He shall not have power nor shall he be permitted in any way to alter or amend any of the terms, provisions or conditions of the Plan nor of the Trust Agreement.

   The compensation and expenses of the impartial person shall be paid one-half by the Company and one-half by the Union.

   c. interpret the Plan to the Employees, including the publication of interpreted material.

4. The testimony of The Local Board members is not credited with the belief that if they were required to hold another hearing to consider plaintiff's claim of entitlement to benefits, they could be fair and impartial in determining whether plaintiff had been regularly engaged in gainful employment. The Budd Company terminated plaintiff's employment based upon the representations of its Local Board members in which the Union appears to have acquiesced. Further, there is nothing persuasive on this record to convince the court that the Local Board or the National Board has or will institute a procedure to insure that claimant will receive a fair hearing and review at the Local Board level or at the National Board appeal level.

letter referred the plaintiff to a particular sub-paragraph within the national agreement which establishes the Plan's authority to terminate pensioner's benefits. Accordingly, the August 15th letter did not comply with the provisions of § 2560.503–1(f) requiring that written notice of denial of benefits include:

(1) The specific reason or reasons for the denial;

(2) Specific reference to pertinent plan provisions on which the denial is based;

(3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

Further, the minimum requirements established in paragraph (g) of 29 C.F.R. § 2560.503–1 require that every review procedure must include provisions permitting the claimant or his duly authorized representative to:

(1) request a review upon written application to the plan;

(2) review pertinent documents; and

(3) submit issues and comments in writing.

As previously stated, plaintiff was never afforded the opportunity to review the evidence which the Local Board acted upon in terminating his benefits. Nor was the plaintiff ever advised by the Local Board or the National Board of ways in which he could submit issues and comments about his termination. Of useful comparison is *Amato v. Bernard,* 618 F.2d 559 (9th Cir. 1980). In *Amato,* the court found that the claims procedure satisfied the requirements of 29 C.F.R. § 2560.503–1 where the plan provided an opportunity (1) for the denied participant to present correspondence to the Board of Trustees for consideration of any claim denied in whole or in part; (2) for the filing of a written petition for reconsideration by the denied participant in which rea-sons for disagreement with the decision of the Board were to be included in writing; and (3) for a hearing on the petition and the opportunity of the Board to receive and hear any evidence or argument which could not be presented satisfactorily by correspondence. *See* 618 F.2d 562 n.1 and 568. The plan in question here clearly does not provide similar opportunities to claimants denied benefits.

Defendant should not be heard to argue that the formal existence of a grievance and arbitration procedure as referred to in 29 C.F.R. § 2560.503–1(b)(2), eliminates the need to comply with the spirit and language of § 2560.503–1(b)(1)(iii) requiring that a benefit plan not be "administered in a way which unduly inhibits or hampers the initiation or processing of plan claims. . . ." In the instant dispute, the Retirement Plan has unduly inhibited plaintiff's claim for benefits due to defendant's failure to provide review procedures satisfying due process requirements of the ERISA statute and the implementing regulations.

Thus, I find that plaintiff has suffered a loss of benefits at the rate of $196.80 per month since August 15, 1977 to which he might otherwise have been able to demonstrate continued entitlement. As a result of the termination of his pension rights, plaintiff has suffered a loss of seniority rights which would enhance his pension. Since plaintiff must not be caused to bear the costs of defendant's failure to develop the proper procedures, an order shall be entered directing the retroactive reinstatement of plaintiff's full benefits since they were never properly terminated. Interest at the rate of 6% per annum shall be added. Additionally, plaintiff is entitled to costs and reasonable attorney fees for having successfully prosecuted his federal claim against defendant.

*Conclusions of Law*

1. This court has jurisdiction of the parties and subject matter by reason of section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) and section 502(e) of the Employee Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. § 1132(e).

2. This action was properly removed to this court from the Court of Common Pleas of Philadelphia County (December Term, 1979, No. 3455) pursuant to 28 U.S.C. § 1446(d).

3. The defendant's Retirement Plan is an employee benefit plan under ERISA.

4. Defendant has a fiduciary responsibility both to the Plan and to the Plan participants.

■ 5. ERISA and its implementing regulations, 29 C.F.R. § 2560.503.1, *et seq.* require that a participant whose claim for benefits is denied must be given a full and fair review of the termination. This necessarily includes being informed of the accusations or evidence underlying the decision and the opportunity to rebut the same, either in writing or at a hearing.

■ 6. A participant in a retirement plan may bring a civil action to recover benefits due him and to enforce rights under the terms of a plan, and to obtain other appropriate equitable relief to redress any violations of provisions of the sub-chapter of ERISA or the terms of the participant's particular plan. 29 U.S.C. § 1132(a).

■ 7. Not having been apprised of the facts relied upon to support a denial of benefits, plaintiff was denied procedural due process in violation of 29 U.S.C. § 1133 and its implementing regulations.

8. Plaintiff is thus entitled to injunctive and monetary relief, including reasonable counsel fees.

An appropriate order follows.

### ORDER

AND NOW, this 9th day of September, 1982, in accordance with the foregoing Findings of Fact and Conclusions of Law, it is hereby ORDERED that:

1. Defendant shall immediately restore plaintiff to his full entitlement under the disability benefits Retirement Plan, calculated as though he had not been terminated from employment by the Budd Company.

2. Defendant shall pay in lump sum to plaintiff, benefits previously denied calculated at $196.80 per month or at any greater rate provided by subsequent labor agreements, from August 15, 1977 to date, at 6% interest per year on the amounts then due.

3. Defendant is hereby enjoined from undertaking to terminate plaintiff's benefits on the basis of any information pertaining to accusations of gainful employment occurring prior to October 12, 1977 and is further enjoined from denying benefits in the future to plaintiff unless a procedure is adopted, and approved by the court, as meeting the requirements of notice of factual specifications for disqualification, as well as claimant's opportunity to perfect his entitlement thereto by rebutting the specific allegations and by presenting evidence in support of his claim.

4. Plaintiff's attorney is entitled to reasonable counsel fees. A petition for the same shall be submitted within twenty-one (21) days of this Order.